**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

HANS KIM,                                :
                                         :   Case No. 1:25-cv-284
    *Plaintiff*,                      :
                                         :   Judge Jeffery P. Hopkins
vs.                                      :
                                         :
SOUTHERN OHIO MEDICAL            :
CENTER, *et. al.*,                       :
                                         :
    *Defendants*.                    :

---

**OPINION AND ORDER**

---

This matter is before the Court on Defendants Southern Ohio Medical Center's ("SOMC") and Wendi Waugh's ("Waugh") (collectively, "Defendants") Motion to Dismiss (Doc. 5) the Complaint filed by Plaintiff Dr. Hans Kim ("Plaintiff" or "Dr. Kim"). Doc. 1. On May 2, 2025, Dr. Kim filed a seven-count Complaint against SOMC and Waugh alleging, among other items, that he was constructively discharged from his employment in violation of both federal and state law. On July 1, 2025, Defendants filed their Motion to Dismiss (Doc. 5) and supporting memorandum (Doc. 5-1), seeking dismissal solely of Dr. Kim's constructive discharge claims, while leaving undisturbed, for the time being, all remaining adverse employment action allegations. Defendants attached as Exhibit 1 a two-page document they characterize as a "coaching document," contending it is central to Dr. Kim's claims and properly considered at the Rule 12(b)(6) stage. Doc. 5-1. Dr. Kim filed a Brief in Opposition on July 22, 2025 (Doc. 9), and Defendants filed a Reply Memorandum on August 4, 2025 (Doc. 10). The matter has been fully briefed and is now ripe for adjudication.

For the reasons set forth below, the Court **DENIES** Defendants' Motion to Dismiss that part of the Complaint alleging the constructive discharge claims. Doc. 5.

## I. BACKGROUND

On May 2, 2025, Dr. Kim filed a seven-count Complaint against SOMC and Waugh, the Cancer Center Administrator for SOMC and Kim's direct administrative manager, arising from his employment as a radiation oncologist at SOMC from July 24 to October 29, 2023. Compl., Doc. 1, ¶¶ 18–23. The Complaint alleges: (1) military status discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301 et seq. (against all Defendants); (2) retaliation in violation of USERRA (against all Defendants); (3) military status discrimination in violation of R.C. § 5903.01 et seq. (against all Defendants); (4) retaliation in violation of R.C. § 5903.01 et seq. (against all Defendants); (5) military status discrimination in violation of R.C. § 4112.01 et seq. (against SOMC); (6) retaliation in violation of R.C. § 4112.02(I) (against all Defendants); and (7) unlawful aiding, abetting, and inciting discrimination in violation of R.C. § 4112.02(J) (against Waugh). *Id.* ¶¶ 60–125.

The facts alleged in the Complaint, taken as true for purposes of this motion, are as follows. Dr. Kim began working for SOMC on July 24, 2023, as a radiation oncologist, executing an Employment Agreement at the outset of his employment. *Id.* ¶¶ 18–20. Seven days after he began working at SOMC, on July 31, 2023, the U.S. Army ordered Dr. Kim to attend active duty training for 26 days beginning August 7, 2023 (the "ADT Order"). *Id.* ¶ 21. Dr. Kim provided a copy of the ADT Order to his direct administrative manager, Waugh, on the same day he received it. *Id.* ¶¶ 22–24. As provided in his orders, Dr. Kim commenced his leave on August 7, 2023, and returned to work on September 5, 2023, roughly twenty-six days

later. *Id.* ¶¶ 25–26. Upon returning to work, Dr. Kim's newborn son tested positive for COVID-19, and SOMC directed him to go home per hospital protocol. *Id.* ¶¶ 27–28. After himself testing negative for COVID-19, Dr. Kim returned to work on September 7, 2023. *Id.* ¶ 29.

Notably, when he returned on September 7, 2023, that was Dr. Kim's first day working on-site at SOMC. *Id.* ¶ 40. Before that and during his first two weeks of employment, Dr. Kim was assigned to perform tasks entirely off-site, including holding meetings with local providers in Columbus, Ohio and Huntington, West Virginia. *Id.* ¶ 39.

Six days later after coming back to work, on September 13, 2023, Waugh and SOMC's Chief Medical Officer, Dr. Kendall Stewart, convened a meeting with Dr. Kim (the "Disciplinary Meeting"). *Id.* ¶¶ 30–31. At that meeting, Waugh presented Dr. Kim with a written list of what she described as "concerns from the radiation oncology staff and [Waugh]" (the "Written Warning"). *Id.* ¶ 32. The Written Warning stated that Dr. Kim was "indecisive about patient management decisions," that his "experience related to reviewing images needs attention," and that he demonstrated a concerning "lack of confidence," when performing his work. *Id.* ¶¶ 34–36. Dr. Kim alleges that the radiation oncology staff did not actually raise any concerns to Waugh about his performance. *Id.* ¶ 33. The Written Warning was issued less than one week after Dr. Kim returned from active duty leave, at a time when he had fewer than three weeks of total on-site employment — a timeframe in which SOMC does not routinely issue performance reviews. *Id.* ¶¶ 37–38, 41. Dr. Kim contends that SOMC issued the Written Warning because of his military status and because he went on leave for active duty training. *Id.* ¶¶ 42–43.

Following the September 13 Disciplinary Meeting with Dr. Stewart, Waugh began holding weekly meetings with Dr. Kim to discuss his performance. *Id.* ¶ 44. On September 16, 2023, Dr. Kim reported to Dr. Elie Saab, a senior SOMC physician, that he believed Defendants were discriminating against him based on his military status (the "Report to Saab"). *Id.* ¶¶ 45–46. That same day after that meeting, Dr. Saab relayed Dr. Kim's concerns to Dr. Stewart. *Id.* ¶ 50. Upon learning about his conversation with Dr. Saab, in late September 2023, Waugh verbally reprimanded Dr. Kim specifically for making the Report to Dr. Saab. *Id.* ¶ 51. Following that reprimand, Waugh made multiple additional comments to Dr. Kim alleging poor performance. *Id.* ¶ 52. Dr. Kim's Employment Agreement with SOMC required 90 days' notice before he could be terminated. *Id.* ¶ 53. On or about October 29, 2023 — less than seven weeks after the issuance of the Written Warning — Dr. Kim resigned, alleging that any reasonable person in his situation would have felt compelled to do so. *Id.* ¶¶ 54–55.

## II.  STANDARD OF REVIEW

As noted, Defendants move to partially dismiss Plaintiff's Complaint for failure to state a claim under Rule 12(b)(6). A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

4

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors (and costs) of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, district court have been instructed to "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, however, district court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

## III.   LAW AND ANALYSIS

### A. Defendants' Exhibit

The Court first addresses Defendants' Exhibit 1 — a two-page document Defendants characterize as a "coaching document" — which conversely Dr. Kim characterizes as a "Written Warning." Doc. 5, PageID 41. Defendants argue the document is properly before the Court because it is referenced nine times in the Complaint, *see* Compl., Doc. 1, ¶¶ 32, 34, 35, 36, 37, 42, 43, 74, 94, and because it appeared as an exhibit in Dr. Kim's prior state court lawsuit and is thus a matter of public record. Doc. 10, PageID 77–78.

Dr. Kim disputes both the characterization and relevance of the document. Doc. 9, PageID 72. Dr. Kim further contends that material factual disputes exist regarding the document's relevance — a prerequisite under this Court's own precedent to its consideration

at the Rule 12(b)(6) stage. Doc. 9, PageID 71–72; *Melissa Singer-Reed v. Planes Moving & Storage, Inc.*, No. 1:22-cv-32, 2024 WL 4117365, at *3 (S.D. Ohio Sep. 6, 2024).

The Court need not resolve whether Exhibit 1 may properly be considered when ruling upon the Motion now under review because the constructive discharge claims survive even assuming the document is what Defendants say it is — a "coaching document" — rather than a "written warning." As discussed below, the face of the document does not, by itself or in combination with Defendants' other arguments, compel dismissal.

### B. Constructive Discharge Is Adequately Pleaded

Constructive discharge occurs when an employer's actions make working conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign. *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004); *Mauzy v. Kelly Servs., Inc.*, 75 Ohio St.3d 578, 588–89 (1996). In the context of federal law, the Sixth Circuit applies an objective test that consists of several relevant factors. These include whether the plaintiff-employee suffered from: (1) demotion; (2) salary reduction; (3) reduction in job duties; (4) reassignment to menial or degrading work; (5) reassignment to a different supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage resignation; or (7) offers of early retirement or continued employment on less favorable terms. *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001); *Brister v. Mich. Bell Tel. Co.*, 705 F. App'x 356, 360 (6th Cir. 2017). In addition to the *Logan* factors, constructive discharge may also be established where "the cumulative effect of the employer's actions would make a reasonable person believe that termination was imminent," because "there is no sound reason to compel an employee to struggle with the inevitable simply to attain the 'discharge' label." *Mauzy*, 75 Ohio St.3d at 588–89. A constructive discharge claim "depends upon the facts of each case

and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee." *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982)).

Dr. Kim has plausibly alleged facts supporting at least the badgering, harassment, or humiliation theory under *Logan* and the cumulative imminent termination theory under *Mauzy*. The Complaint alleges a pattern of five escalating adverse employment actions. First, Defendants issued the Written Warning to Dr. Kim, here less than one week after he returned from active duty military leave, and when Dr. Kim had fewer than three weeks of total on-site employment — at a timeframe in which SOMC does not routinely issue performance reviews. Compl., Doc. 1, ¶¶ 37–41. Second, the Written Warning contained criticisms that Dr. Kim alleges were completely fabricated. In his view, the radiation oncology staff "did not actually raise concerns to Waugh about Kim's performance," yet Waugh attributed those criticisms to staff in the Written Warning. *Id.* ¶ 33. Third, following the Written Warning, Waugh imposed mandatory weekly performance meetings with Dr. Kim. *Id.* ¶ 44. Fourth, in late September 2023, Waugh verbally reprimanded Dr. Kim specifically because he had engaged in protected activity by reporting allegations of employment discrimination retaliation, specifically violations of USERRA to Dr. Saab. *Id.* ¶ 51. Fifth, following that reprimand, Waugh made "multiple comments to Kim, alleging poor performance." *Id.* ¶ 52. When taken together, Dr. Kim avers that "[o]n or about October 29, 2023, a reasonable person in Kim's situation would have felt compelled to resign." *Id.* ¶ 54.

Construed in the light most favorable to Dr. Kim, as we must in this early stage of the proceeding, *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2006), all these allegations plausibly describe a campaign of escalating adverse conduct — commencing

immediately upon Dr. Kim's return from protected military leave, intensifying after he engaged in protected internal reporting activity, and culminating in his resignation less than seven weeks later. Whether this conduct rises to the level of constructive discharge is inherently fact-intensive. *Smith*, 376 F.3d at 533. The content of Waugh's weekly performance discussions, the nature of her multiple additional performance-related comments, and the full context of the allegedly fabricated Written Warning are facts not before the Court and not required to be pleaded with particularity at this stage. *Swierkiewicz v. Sorem a N. A.*, 534 U.S. 506, 511 (2002) ("[W]e have rejected the argument that a[n] [employment discrimination] complaint requires greater 'particularity,' because this would 'too narrowly constric[t] the role of the pleadings.'" (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n.11 (1976)). Consequently, the ordinary rules for assessing the sufficiency of a complaint apply. *See, e.g.*, *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims"); Doc. 9, PageID 70–71.

### C. Defendants' Arguments Do Not Compel Dismissal

Defendants argue that criticism by an employer of an employee's performance is categorically insufficient to support a constructive discharge claim under Sixth Circuit precedent. Doc. 5-1, PageID 40 (citing *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 631 (6th Cir. 2018); *Brister*, 705 F. App'x at 360; *Henry v. Abbott Labs.*, 651 F. App'x 494, 507–08 (6th Cir. 2016); *Savage v. Gee*, 665 F.3d 732, 739–40 (6th Cir. 2012); *Agnew v. BASF Corp.*, 286

8

F.3d 307, 310 (6th Cir. 2002); *Caslin v. Gen. Elec. Co.*, 696 F.2d 45, 46 (6th Cir. 1982)). This argument fails for two independent reasons.

First, and most fundamentally, every case Defendants cite was decided at the summary judgment stage or at trial — not on a Rule 12(b)(6) motion. Doc. 9, PageID 70. Defendants have not cited a single case in which a court dismissed a constructive discharge claim under Rule 12(b)(6) based on facts comparable to those alleged here. *Id.* The applicable standard at this stage is not whether Dr. Kim can prove his constructive discharge claim, but whether he has plausibly alleged it. *Twombly*, 550 U.S. at 570. Whether the alleged conduct satisfies the *Logan* factors or the *Mauzy* cumulative-effect test is precisely the kind of fact-intensive inquiry reserved for summary judgment following the development of a full record or trial perhaps, if material facts are disputed. *Smith*, 376 F.3d at 533.

Defendants counter that the stage at which a case is decided is irrelevant, asserting that "it's the conduct that matters." Doc. 10, PageID 80. The Court disagrees. The applicable legal standard differs fundamentally between a Rule 12(b)(6) motion and a motion for summary judgment. At the pleading stage, Dr. Kim is entitled to not only have the Court accept all the facts alleged in the Complaint as true, it must also accept all reasonable inferences in his favor, too. The Court cannot weigh the sufficiency of his alleged facts against the conduct without access to a developed factual record. That determination requires discovery.

Second, Dr. Kim's allegations go well beyond mere performance criticism. He alleges that the Written Warning was issued under pretextual circumstances — based on fabricated staff complaints, *see* Compl., Doc. 1, ¶ 33, delivered within days of his return from protected military leave, *id.* ¶ 37, at a time when SOMC does not routinely issue performance reviews, *id*. ¶ 41 — and that it was followed by a verbal reprimand directly targeting his protected

reporting activity, *id.* ¶ 51, mandatory weekly performance meetings, *id.* ¶ 44, and multiple additional performance-related comments, *id.* ¶ 52. The proximity of this conduct to Dr. Kim's protected military leave, coupled with all the other facts and circumstances related to the events alleged in his Complaint occurring contemporaneously, including his protected internal complaint raise plausible inferences of a deliberate effort to force his resignation. This distinguishes Dr. Kim's case from the performance-criticism cases Defendants cite, in which there were no comparable allegations of pretext or retaliatory motive.

Defendants also argue that Dr. Kim failed to remain on the job and to give SOMC a meaningful opportunity to remedy any alleged discrimination before resigning. Doc. 5-1, PageID 43. While the law does generally require an employee to remain and seek redress before claiming constructive discharge, whether Dr. Kim adequately did so — and whether conditions were sufficiently severe to excuse earlier departure — turns on facts not yet in the record. Dr. Kim alleges he reported employment discrimination related to his military leave to Dr. Saab at a meeting held on September 16, 2023, *see* Compl., Doc. 1, ¶ 45, and that directly afterwards Waugh verbally reprimanded him specifically for making that report, *id.* ¶ 51. Whether that report and the ensuing retaliation discharged any obligation to seek further internal redress is a factual question that cannot be resolved against Dr. Kim at this stage.

### D. Defendants' Exhibit Does Not Change the Analysis

Even assuming arguendo that the Court were to consider Exhibit 1 as Defendants have asked, it still does not compel dismissal of the constructive discharge claims. Defendants acknowledge that the document closes with an expression of support for Dr. Kim's continued employment: "We want you to enjoy a long, satisfying practice at SOMC. We will do any reasonable thing to help you achieve that goal as you work to improve your clinical and

leadership skills." Doc. 5-1, PageID 42–43. That language, however, speaks only to the face of the document. Dr. Kim's constructive discharge theory rests not on the document in isolation, but on the full context in which it was delivered and the actions by Defendants surrounding it — including the allegation that the criticisms within it were fabricated, *see* Compl., Doc. 1, ¶ 33, that it was issued days after his return from protected military leave, *id.* ¶ 37, and that it was followed by a sustained campaign of retaliatory conduct, *id.* ¶¶ 44, 51–52. Whether the cumulative effect of those circumstances would cause a reasonable person to believe termination was imminent cannot be determined from the face of the document alone. *Mauzy*, 75 Ohio St.3d at 588–89.

### D. Leave to Amend

Because the Court denies Defendants' Motion to Dismiss the constructive discharge claims, it need not address Dr. Kim's alternative request for leave to amend his Complaint relative to those claims. Doc. 9, PageID 73–74. The Court does note, however, that Defendants raise a colorable argument that Dr. Kim's request — embedded within his opposition brief rather than filed as a standalone motion — does not constitute a proper motion for leave to amend under Fed. R. Civ. P. 15(a). *See Salazar v. Paramount Glob.*, 133 F.4th 642, 653 (6th Cir. 2025). The Court expresses no view on that issue at this time save to make this point. The issue is otherwise rendered moot by this Order.

## IV.    CONCLUSION

For the reasons stated, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's claims of a constructive discharge. Doc. 5.

11

**IT IS SO ORDERED.**

June 3, 2026

Jeffery P. Hopkins
United States District Judge